MIGUEL A. ROSA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rosa v. Commissioner
Docket Nos. 17570-87; 30339-87
United States Tax Court
T.C. Memo 1990-138; 1990 Tax Ct. Memo LEXIS 138; 59 T.C.M. (CCH) 113; T.C.M. (RIA) 90138; March 15, 1990
James A. Horland, for the petitioner. Theresa E. Mitchell, for the respondent. SWIFT
*250 MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: On January 29, 1987, respondent made a jeopardy assessment against petitioner for 1985 and a termination assessment against petitioner for 1986. On March 18, 1987, and on June 9, 1987, respondent mailed notices of deficiency to petitioner for 1985 and 1986, reflecting deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax, I.R.C. Secs. [1]
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
6661
1985
$ 491,597 $ 122,149  $ 24,580
* $ 35,213
$ 122,899
1986
216,607 54,152  10,830 **
10,480
54,152
*139 The issues for decision are whether petitioner had unreported income in 1985 and 1986 from specific cocaine smuggling transactions referred to in the notices of deficiency and whether petitioner is liable for the additions to tax. At trial, petitioner did not offer any evidence. Petitioner relies on various cases regarding "naked assessments" and argues that respondent's determinations are arbitrary and cannot be sustained because they are based exclusively on specific allegations for which respondent has not produced any credible evidence. Respondent disputes that the notices of deficiency lacked foundation and claims that the notices are entitled to the usual presumption of correctness. At trial, respondent called and questioned witnesses and introduced into evidence various documents. FINDINGS OF FACT Some of the facts are stipulated and are so found. Petitioner's legal residence was Port Orange, Florida, at the time the petitions in these consolidated cases were filed. Since December 22, 1986, petitioner has been incarcerated in the Dominican Republic, where he is serving a 10-year prison term for drug trafficking. The documentary evidence, testimony of one of petitioner's *140 co-conspirators in the illegal importation of cocaine, and admissions made by petitioner to various law enforcement officers, establish the following facts. On several occasions during 1985 and 1986, petitioner, his partner Rene Nunez, and three other individuals residing in south Florida smuggled cocaine into the United States. Under their modus operandi, petitioner and his associates wired funds to suppliers in Columbia for the purchase of cocaine. Some of the cocaine was purchased by petitioner. Most of the cocaine, however, apparently was purchased by others and illegally smuggled by petitioner and his associates into the United States for a fee. *251 After filing false flight plans (with the paid assistance of certain air traffic officials in the Dominican Republic and Haiti), petitioner piloted a light, propeller airplane to Columbia to pick up the cocaine. After inventorying and loading the cocaine aboard the airplane in Columbia, petitioner flew to a clandestine air strip, sometimes in the Bahamas and sometimes in the Dominican Republic. In the meantime, petitioner's associates piloted power boats from Florida to the vicinity of the prearranged air strip in the *141 Bahamas or the Dominican Republic. On landing the airplane in the Bahamas or in the Dominican Republic, petitioner and his associates hastily unloaded the cocaine from the airplane, again inventoried the cocaine, and loaded the cocaine aboard the power boats. Petitioner's associates also washed mud off the airplane (from the landing in Columbia) and topped off its fuel tanks. Petitioner's associates then transported the cocaine on the power boats to a prearranged, clandestine location in Florida. At the same time, petitioner proceeded to fly the airplane to the final destination indicated on the original flight plan and then flew the airplane to Florida to await arrival of the power boats. Once in Florida, petitioner and his associates delivered the cocaine to the various individuals who had hired them to smuggle the cocaine into the United States, and they were paid a fee based on the quantity of cocaine involved. Petitioner personally received a net fee of $ 5,000 for each kilo of cocaine smuggled into the United States by him and his associates for others. Petitioner and his associates also sold the portion of the cocaine that they personally had purchased. During 1985, *142 petitioner apparently smuggled cocaine into the United States from Columbia on four separate occasions in the approximate quantities indicated below: Month
Kilos of Cocaine
January
907
February
400
May
700
June
465
During the last shipment, United States authorities in Delray Beach, Florida, seized one of the boats loaded with 165 kilos of cocaine. Apparently, petitioner personally purchased 25 kilos of each of the four shipments of cocaine (or a half interest in 50 kilos of each shipment). Petitioner paid $ 5,000 for each kilo, and he sold each kilo for $ 25,000. In January or February and in April of 1986, petitioner smuggled additional cocaine into the United States. In December of 1986, petitioner again attempted to smuggle cocaine into the United States. On December 21, 1986, petitioner landed his airplane loaded with 168 kilos of cocaine on an air strip on a farm petitioner owned in Mao, Dominican Republic. Petitioner and his associates off-loaded 150 kilos of cocaine in Mao. Petitioner then flew the airplane, still loaded with 18 kilos of cocaine, to Puerto Plata, Dominican Republic. Petitioner exited the airplane in Puerto Plata and went *143 to a home he owned in neighboring Sosua, where he was arrested on December 22, 1986. Law enforcement authorities seized the 18 kilos of cocaine petitioner smuggled into Puerto Plata, as well as the 150 kilos of cocaine off-loaded in Mao. On December 16, 1987, Dominican authorities convicted petitioner of drug trafficking with respect to the incidents associated with the December 22, 1986, arrest, sentenced petitioner to 10 years in prison, and fined petitioner 50,000 Dominican pesos. During an interview with an agent of the United States Drug Enforcement Administration ("DEA") following his arrest, petitioner admitted that in November of 1985 he had smuggled 400 kilos of cocaine into the United States. On March 7, 1987, a Federal grand jury in the Southern District of Florida indicted petitioner on charges of cocaine trafficking. Petitioner currently is listed as a fugitive by the DEA. During 1985 and 1986, petitioner owned a house in Daytona Beach, Florida, and a house in Port Orange, Florida. Between 1983 and 1986, petitioner purchased four airplanes. At some time prior to or during 1985, petitioner purchased a steel or iron works plant in the Dominican Republic, which petitioner *144 owned in 1985 and 1986. During 1985 and 1986, petitioner purchased approximately 30 pieces of foundry and metal working machinery from manufacturers in Europe. Also during 1985, petitioner purchased a new BMW automobile; a discotheque located in Daytona Beach, Florida, for $ 700,000; and two new houses in the Dominican Republic. During 1986, petitioner purchased five new automobiles -- a 1986 BMW that petitioner gave to his wife, a 1986 Mercedes Benz 450 SL that petitioner gave to his sister, a 1986 Mercedes Benz 280 SEL that petitioner gave to his father, a 1986 Mercedes Benz 230 SE that petitioner gave to his cousin, and a 1986 Mercedes Benz 300 that petitioner purchased for himself. Petitioner's Federal income tax returns for 1981 through 1984 reflect gross income and taxable income as follows: Year
Gross Income
Taxable Income
1981
$ 27,000
$ 23,500
1982
45,970
37,673
1983
67,616
49,681
1984
78,582
50,837
*252 Petitioner did not file Federal income tax returns for 1985 or 1986. On audit, respondent determined that petitioner received $ 1 million in 1985 and $ 450,000 in 1986 from his cocaine smuggling activities, *145 and respondent determined the various additions to tax at issue. Respondent made very specific allegations in his notices of deficiency regarding the sources of petitioner's income, as follows: 1985
On December 21, 1986, you were arrested by the Dominican Republic National Police while operating your Cessna 404 (HI-450) carrying a load of * * * cocaine. You indicated at that time that this was your first smuggling trip in more than one year. Your last trip was to deliver approximately 400 kilos of cocaine, for a Colombian residing in South Miami, Florida. Based on your statements, it has been determined that you earned income in 1985 in the amount of $ 1 million (400 kilos cocaine X $ 25,000 wholesale value of kilo of cocaine x estimated commission of 10% = $ 1 million). Accordingly, your taxable income is increased for 1985 in the amount of $ 1 million. 1986
On December 21, 1986, you were arrested by the Dominican Republic National Police while operating your Cessna 404 (HI-450) carrying a load of approximately 18 kilograms of cocaine. On December 24, 1986, you were debriefed by law enforcement personnel. During this debriefing, you stated that the total load *146 was 168 kilos and you had already dropped off 150 kilos near Mao, Dominican Republic. Based on your statements, it has been determined that you earned income in 1986 in the amount of $ 450,000 (18 kilos cocaine X $ 25,000 wholesale value of kilo of cocaine = $ 450,000). Accordingly, your taxable income is increased for 1986 in the amount of $ 450,000. OPINION Respondent's determinations in notices of deficiency generally are entitled to a presumption of correctness, which places upon taxpayers the burden of proof and the burden of going forward with evidence to establish the correct amount of their income. ; Rule 142(a). We ordinarily will not look behind the notices of deficiency to examine the sufficiency of evidence upon which respondent relied in making his determinations. , affd. without published opinion (7th Cir. 1986); . Where, however, it is demonstrated that the notices of deficiency are arbitrarily excessive or without any foundation, the burden of going forward with *147 the evidence shifts to respondent. . As a practical matter, it is not easy for taxpayers to prove a negative (namely, that they did not receive the illegal unreported income). , affg. in part and revg. and remanding in part ; , revg. . Some courts have suggested that for respondent to rely upon the presumption of correctness in a case involving alleged illegal unreported income, respondent must offer some predicate evidence connecting the taxpayer to the specific illegal income-producing activity alleged in the notice of deficiency. ; ; , affg. in part, revg. in part, and remanding a Memorandum Opinion of this Court. Under section 61, gross income includes "all income from whatever source derived," including that *148 derived from illegal activities. , citing . As indicated, petitioner offered no evidence. Petitioner contends that respondent's determinations constitute naked assessments, therefore that no presumption of correctness attaches to respondent's determinations, and that respondent bears the burden of going forward with the evidence, which burden petitioner argues respondent has failed to satisfy. Respondent argues that his determinations do not represent naked assessments and are entitled to the usual presumption of correctness. Respondent also expressly asks us to charge petitioner only with the specific income set forth in the notices of deficiency for each year. The record is clear that petitioner in 1985 and 1986 was engaged in the illegal smuggling of cocaine into the United States and that petitioner received substantial income in connection with his smuggling activities. Petitioner's conviction for illegally smuggling cocaine, the testimony of a co-conspirator, petitioner's own admissions, and petitioner's extravagant expenditures in 1985 *149 and 1986 provide adequate foundation to support respondent's determinations. Respondent's determinations as set forth in his notices of deficiency do not constitute naked assessments. Thus, a rebuttable presumption of correctness attaches to respondent's determinations for both 1985 and 1986, and the burden of *253 going forward with evidence, as well as the burden of proof, to establish petitioner's correct tax liability and to establish petitioner's nonliability for the additions to tax remains with petitioner. See , affg. a Memorandum Opinion of this Court. With regard to respondent's determinations for 1985, they are presumptively correct, and the evidence fully supports the additional income charged to petitioner as well as the additions to tax. In fact, the evidence with respect to 1985 would support a significantly higher income figure, but (as indicated) respondent only asks us to charge petitioner with the specific income set forth in his notice of deficiency. We sustain respondent's determinations of tax and additions to tax for 1985 in full. With regard to respondent's determinations *150 for 1986, the evidence of record establishes that petitioner did not receive the specific income set forth in respondent's notice of deficiency for 1986. The evidence is clear that the entire shipment of cocaine involved in the December 21, 1986, smuggling attempt was seized by law enforcement officers in the Dominican Republic before petitioner was able to deliver it in Florida. Thus, petitioner would not have been paid, and would not have been entitled to payment, for either the delivery of the cocaine or for any sales proceeds with regard to his ownership interest, if any, in the cocaine (delivery not having been made and no sale having occurred). Because respondent has expressly limited his determinations, as well as his position in this case, with regard to 1986 to income petitioner would have received if the 18 kilos of cocaine had been delivered in Florida and because the evidence establishes that petitioner's smuggling activities with respect to that shipment of cocaine were unsuccessful, we find for petitioner with regard to the tax deficiency determined for 1986. Due to our conclusion as to the tax deficiency for 1986, the additions to tax for that year are moot. *151 Decision will be entered for the respondent in docket No. 17570-87. Decision will be entered for the petitioner in docket No. 30339-87. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest due on $ 491,597. ** 50% of the interest due on $ 216,607. ↩